UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-cv-00666-FDW-DCK

| | |
|---|---|
| TARYN MILLER, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>UNION COUNTY PUBLIC SCHOOLS, )<br>and JANICE BURNS, in her official and )<br>individual capacity, )<br>)<br>Defendants. ) | ORDER |

**THIS MATTER** is before the Court on Motions to Dismiss filed by Defendant Union County Board of Education ("UCBOE" or "the Board"), (Doc. No. 19), and Defendant Janice Burns ("Principal Burns" or "Ms. Burns") (Doc. No. 21). The Board and Ms. Burns (collectively, "Defendants") move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (2) and (6) for lack of subject-matter jurisdiction, lack of personal jurisdiction, and for failure to state a claim upon which relief can be granted. For the reasons that follow, the motions are GRANTED in part and DENIED in part.

### I. BACKGROUND

Plaintiff is a former student at Sun Valley High School ("SVHS"), which is operated by the Board.[1] (Amd. Compl. ¶¶ 3, 12). Plaintiff alleges she was sexually harassed by a male student

---
[1] The background is based on allegations in Plaintiff's Amended Complaint (Doc. No. 18). In light of the procedural posture of this case and the grounds asserted in the motion to dismiss, the allegations are taken in the light most favorable to Plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993) (noting that when acting under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.").

1

at SVHS ("Offender") over the course of her freshman, sophomore, and junior years. (Amd. Compl. ¶¶ 16-17). Plaintiff enrolled at SVHS in 2009. (Amd. Compl. ¶12). Plaintiff claims during her freshman year, she was friends with the Offender. (Amd. Compl. ¶ 18). However, Plaintiff alleges she terminated the friendship following a dispute. (Amd. Compl. ¶ 20). In November 2009, the Offender allegedly began criticizing Plaintiff's other relationships and following Plaintiff around campus. (Amd. Compl. ¶ 19). Plaintiff's mother allegedly brought the behavior to the attention of Assistant Principal Pusser[2] and Student Resource Officer (SRO) A.J. Wallace in November 2009. (Amd. Compl. ¶ 23). The SRO confronted the Offender and advised him to cease contact with Plaintiff. Id.

Plaintiff alleges that in March 2010, the "offender's harassment of the Plaintiff escalated" and he made "inappropriate and sexually explicit remarks to the Plaintiff" on an almost daily basis. (Amd. Compl. ¶ 24). Plaintiff alleges SRO Wallace encouraged her to draw attention to such harassment by creating a scene. (Amd. Compl. ¶ 25). Subsequently, when the Offender allegedly made unwanted sexual comments to her on the bus, she responded by exclaiming "What the f__k?" Id. For this, Plaintiff allegedly received an in-school suspension for her conduct. (Amd. Compl. ¶¶ 25, 26). Plaintiff alleges, soon after the incident on the bus, her mother and SRO Wallace spoke to Assistant Principal Pusser about the harassment. (Amd. Compl. ¶ 26). Assistant Principal Pusser was made aware Plaintiff had intended to bring attention to the abuse by uttering profanity. (Amd. Compl. ¶ 27).

After this meeting, SRO Wallace allegedly spoke with the Offender and warned him to refrain from contacting Plaintiff. (Amd. Compl. ¶ 29). On May 2010, Plaintiff's mother allegedly

---

[2] Pusser's first name is not included in Plaintiff's Amended Complaint.

spoke with SRO Wallace again about the Offender's continuing behavior. (Amd. Compl. ¶ 30). At this point, Wallace advised Plaintiff's mother to seek a no-contact order. Id. According to Plaintiff's Amended Complaint, "Plaintiff's mother sought a No Contact Order from a Union County Magistrate." (Amd. Compl. ¶ 31).

In August 2010, the start of Plaintiff's sophomore year, Plaintiff alleges her mother met with SRO Wallace, Assistant Principal Pusser, and Mr. Reynolds (the band teacher) to present her concerns to them. (Amd. Compl. ¶ 32). At this point, the Offender had allegedly joined chorus and drama classes, providing him with additional opportunities to be in contact with Plaintiff. (Amd. Compl. ¶ 32). Outside of the classroom, Plaintiff claims the Offender attempted to contact her via Facebook. (Amd. Compl. ¶ 33). Plaintiff alleges copies of these Facebook messages, dated September 16, 2011, were provided to Assistant Principal Pusser. Id. Plaintiff further alleges these posts showed the Offender had "pressured Plaintiff to perform sex acts and to smoke pot." (Amd. Compl. ¶ 34). Upon being "made aware of these posts," Assistant Principal Pusser allegedly claimed there was nothing we can do given the harassment was "occurring in the community." (Amd. Compl. ¶ 35). Assistant Principal Pusser is alleged to have committed to monitoring all activity on the school campus, while also reiterating there was nothing he "would or could do" with regards to cyber harassment. Id. Plaintiff also alleges the Offender's bike was discovered beneath her bedroom window during this time. (Amd. Compl. ¶ 33(a)). Plaintiff asserts the SRO subsequently confronted the Offender, instructing him to remove his bike from Plaintiff's property and cease all contact with her. (Amd. Compl. ¶ 36).

Plaintiff alleges the Offender "admitted he committed sexual assault" on four occasions, though Plaintiff does not detail these admissions. (Amd. Compl. ¶ 37). Additionally, Plaintiff

3

alleges she "suffered an incident of stalking, harassment and assault" on January 17, 2012, during her junior year. (Amd. Compl. ¶ 38). On that day, Plaintiff asserts the Offender entered a girl's locker room on school grounds and, finding Plaintiff alone, proceeded to rub her shoulders and kiss her neck. Id. Plaintiff claims she immediately reported the incident to Mr. Reynolds. Id. Plaintiff's mother allegedly told Assistant Principal Deming and SRO Wallace about the locker room incident on January 26, 2012, and described her concerns about changes in Plaintiff's behavior. (Amd. Compl. ¶ 39). Such changes allegedly included disruptions in eating, sleeping, and academic patterns of behavior. Id.

After the alleged locker room incident, Plaintiff alleges her mother became aware Plaintiff had been subject to sexual harassment "on a daily basis" from 2011 to 2012. (Amd. Compl. ¶¶ 39, 40). Over the course of that year, Plaintiff alleges the Offender touched her hair, neck, back, and chest, groped her breasts, made sexually explicit comments, contacted her by telephone, text, and Facebook, and harassed her on campus, on the school bus, during extracurricular activities, and through third party contacts. Id.

Plaintiff claims her mother spoke with Assistant Principal Deming and the SRO on January 27, 2012, and reported the alleged sexual harassment. (Amd. Compl. ¶ 41). In February 2012, Plaintiff alleges her mother obtained a temporary restraining order ("TRO") against the Offender. (Amd. Compl. ¶ 45). According to Plaintiff, the Board was allegedly aware of the TRO and the acts which formed the basis for the order, but did not investigate "the complaint." (Amd. Compl. ¶ 46). Plaintiff does not provide any further factual allegations to support the claim the Board had knowledge of the TRO or the underlying actions of the offender. Plaintiff asserts her mother provided copies of the TRO to several school employees including Assistant Principal Deming,

Mr. Reynolds, and Principal Janice Burns, as well as SRO Wallace. (Amd. Compl. ¶ 46). Plaintiff claims these individuals did not attend a hearing on February 17, 2012, at which the court declined to extend the TRO. Id. Notably absent from Plaintiff's Amended Complaint are allegations inferring any school official or administrator was asked or required to attend the hearing. Plaintiff also does not assert the attendance of any of the school officials or Board members would have affected the outcome of the February 17 hearing.

On February 27, 2012, Plaintiff's mother removed her from SVHS, citing her concerns about the lack of a safety plan and fear for Plaintiff's safety. (Amd. Compl. ¶¶ 43, 47). On or about May 4, 2012, the school provided Plaintiff's mother with a draft safety plan, which the parties negotiated and the school implemented when Plaintiff returned to SVHS on May 25, 2012. (Amd. Compl. ¶¶ 47, 48). That same day, a faculty member allegedly told Plaintiff's mother the faculty member "had not been made aware that Plaintiff had a safety issue and was not made aware of what she needed to do to protect Plaintiff s safety interests." (Amd. Compl. ¶ 49). Plaintiff asserts her mother removed her from SVHS that same day due to "difficulty Plaintiff experienced with the Defendants, and because of the attitude, demeanor and lack of support from the school Principal and school officials." (Amd. Compl. ¶ 56).

After removing her daughter from SVHS, Plaintiff's mother requested class assignments from Plaintiff's teachers so Plaintiff could complete the requirements for the academic year. (Amd. Compl. ¶¶ 50-51). Plaintiff claims she was provided the assignments and requirements only after "much effort by Plaintiff's mother." (Amd. Compl. ¶ 50-51). Plaintiff further alleges she did not receive feedback on her assignments until November 2012, and only received her final grades and transcripts in February 2013. (Amd. Compl. ¶ 53). Plaintiff claims the grades she

5

eventually received were inaccurate. Id. Plaintiff asserts her emotional health and academic performance was affected by the alleged sexual harassment. (Amd. Compl. ¶¶ 55). According to Plaintiff, her "decline in performance," "poor transcript," and "Defendants' failure to promptly investigate and remedy the problems she encountered" prevented her from applying to or be accepted at educational institutions where she otherwise would have had an "excellent opportunity of admission." (Amd. Compl. ¶¶ 57). Plaintiffs filed the instant action against Union County Board of Education and Principal Janice Burns on September 14, 2016. All Defendants have moved to dismiss Plaintiff's claims against them.

## II. STANDARD OF REVIEW

Defendants' motions to dismiss contend Plaintiff fails to state a claim under which relief can be granted, and consequently, no subject matter jurisdiction exists over Plaintiff's claims under state law.

### A. Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of a lawsuit. Subject matter jurisdiction exists in federal district court when the complaint raises a federal question under 28 U.S.C. § 1331 or diversity of citizenship under 28 U.S.C. § 1332. Lack of such jurisdiction may be raised at any time by a litigant or the court. Mansfield, C. & L. M. RY. CO. v. Swan, 111 U.S. 379, 382 (1884).

### B. Failure to State a Claim

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a complaint must contain enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

6

Tomboy, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663. While the Court accepts plausible factual allegations in the complaint as true and considers those facts in the light most favorable to a plaintiff when ruling on a 12(b)(6) motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

### III. ANALYSIS

Plaintiff's Amended Complaint asserts three causes of action against both Defendants: (1) Violation of Title IX, (2) Violation of 42 U.S.C. § 1983, and (3) Negligent Infliction of Emotional Distress. The Court addresses Defendants' motions to dismiss these claims in turn, beginning with the Board's Motions to Dismiss.

**A.  Claims against Union County Board of Education**

The Board argues Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted and moves to dismiss claims asserted for violations of Title IX and 42 U.S.C. § 1983, as well as Plaintiff's claim for negligent infliction of emotional distress claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

   **i.  Title IX Claim**

Plaintiff first alleges UCBOE failed to provide her with a safe educational environment, thereby violating Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681(a) (Amd. Compl. ¶ 59(a)). Title IX states, in pertinent part:

> [n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under

any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

It is well-settled that sexual harassment qualifies as discrimination under Title IX, and, in the school context, "student-on-student sexual harassment, if sufficiently severe, can likewise rise to the level of discrimination." Davis Next Friend Lasorda D. v. Monroe City. Bd. of Educ., 526 U.S. 629, 650, 119 S. Ct. 1661, 1674, 143 L. Ed. 2d 839 (1999) (citing Bennett v. Kentucky Dept. of Ed., 470 U.S. 656, 665–666, 105 S. Ct. 1544, 84 L.Ed.2d 590 (1985)). To state a Title IX claim against an institution based on sexual harassment, a plaintiff must sufficiently allege four elements:

> (1) she was a student at an educational institution receiving federal funds, (2) she was subjected to harassment based on her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution.

Jennings v. Univ. of N. Carolina, 482 F.3d 686, 695 (4th Cir. 2007) (citation omitted). In order to impute liability to an institutional defendant for a Title IX violation, Plaintiff must allege "an official who . . . has authority to address the alleged discrimination and to institute corrective measures . . . has actual knowledge of discrimination in the [institution's] programs and fails adequately to respond" or displays "deliberate indifference" to discrimination." Id. at 700 (quoting Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998); see also Doe v. Bd. of Educ. of Prince George's City., 888 F. Supp. 2d 659, 666 (D. Md. 2012); Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 257, 129 S. Ct. 788, 797, 172 L. Ed. 2d 582 (2009) ("Title IX plaintiff can establish school district liability by showing that a single school administrator with authority to take corrective action responded to harassment with deliberate indifference."); Davis Next Friend LaShonda D., 526 U.S. at 654 ("The complaint also suggests that petitioner may be able to show both actual knowledge and deliberate indifference on

the part of the Board, which made no effort whatsoever either to investigate or to put an end to the harassment.").

The Board does not directly contest the sufficiency of the factual allegations as to the first three elements of the Title IX claim. (Doc. No. 20, p. 6). Indeed, this Court finds Plaintiff sufficiently states facts supporting each of the first three elements. The Board moves to dismiss Plaintiff's Title IX claim on the basis that the Amended Complaint fails to sufficiently allege the fourth element: imputing liability upon the Board. (Doc. No. 20, p. 6-7). At issue, therefore, is whether Plaintiff sufficiently alleged facts to show: (1) the Board had actual notice of the alleged harassment; or (2) the Board responded to such harassment with deliberate indifference.

A school board may be said to have actual notice of sexual harassment where school officials have actual knowledge of student-on-student harassment. See Davis Next Friend Lasorda D.., 526 U.S. at 654 (reversing lower court's dismissal of Title IX case against school board where Plaintiff alleged principal had actual knowledge of sexual harassment). School officials are put on notice when incidents of student-on-student harassment are repeatedly reported to those officials with authority to take remedial action. Bd. of Educ. of Prince George's City, 888 F. Supp. 2d at 667. In Prince George's City, the court denied a school board's motion to dismiss a Title IX case where a student allegedly reported ongoing harassment to a principal and an assistant principal on multiple occasions. Id. In that case, the court reasoned, "[p]laintiffs have stated a cognizable claim that both [the principal] and [assistant principal] had actual notice of the alleged harassment, and, hence, there may be a basis for imputing this notice to the Board." Id.

A school board that receives federal funding may be liable for harassment under Title IX where the board's deliberate indifference effectively subjects students under the board's

supervision to harassment. See Davis, 526 U.S. at 644–45, 119 S. Ct. 1672 (stating a board's deliberate indifference must be such that it makes students vulnerable to harassment). Students may be found to be under the supervision of a school board in situations where they are on school grounds during school hours or otherwise taking part in school activities. Id. at 630, 119 S. Ct. 1665. Where ongoing sexual harassment is reported to authorities capable of taking remedial action on behalf of an institution, and those authorities fail to take action to address the harassment, the institution may be held liable for deliberate indifference. See id. at 651, 119 S. Ct. 1675 (illustrating deliberate indifference through a hypothetical scenario where school administrators' dismissal of female students' reports asserting harassment from male students is preventing them from using school resources); Jennings v. Univ. of N. Carolina, 482 F.3d at 700.

In the instant case and construing the factual allegations in the light most favorable to Plaintiff, the Amended Complaint sufficiently states a facially plausible Title IX claim against the Board. The Court therefore **DENIES** Defendant UCBOE's Motion to Dismiss the Title IX claim.

### ii. 42 U.S.C. § 1983 Claim

The Board also seeks dismissal of Plaintiff's § 1983 claim based on student-on-student sexual harassment in violation of Title IX and the Fourteenth Amendment Equal Protection Clause. To state a claim under 42 U.S.C. § 1983 against a school board for violation of Equal Protection Clause, a plaintiff must assert the alleged harassment resulted from a "municipal custom, policy, or practice." Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 257–58, 129 S. Ct. 788, 797, 172 L. Ed. 2d 582 (2009) (citing Modell v. New York City Dept. of Social Serves. 436 U.S. 658, 694, 98 S.C. 2018, 56 L.Ed.2d 611 (1978)). Defendants argue Plaintiff fails to allege facts suggesting the harassment or the school's response thereto was the product of a custom, policy, or

practice of the Board. (Doc. No. 20, p. 11). However, a plaintiff may establish the existence of an official policy by asserting either the omissions or affirmative acts of supervisory officials. Avery v. Burke City., 660 F.2d 111, 114 (4th Cir. 1981). Under § 1983, liability attaches to those supervisory officials responsible for rule-making who unreasonably fail to establish rules or policies, thereby causing their employees' constitutional violations. Withers v. Levine, 615 F.2d 158 (4th Cir. 1980).

In the case at hand, Plaintiff alleges she and her mother reported multiple incidents of harassment to school officials over the course of three years. Despite the alleged ongoing sex-based harassment, Plaintiff asserts school administrators declined to investigate or impose remedial action upon the Offender. Rather, the Amended Complaint asserts at least one school official informed Plaintiff there was "nothing he would or could do" to assist her in mitigating the harassment. (Amd. Compl. ¶ 35). Plaintiff claims she was punished with an in-school suspension for her reaction to offender's behavior, whereas the Offender was not subjected to disciplinary actions.

Accepting as true all of the factual allegations contained in the Amended Complaint, Plaintiff has stated a facially plausible student-on-student harassment and Equal Protection Claim. The Court therefore **DENIES** the Board's Motion to Dismiss the 42 U.S.C. § 1983 claim.

    **iii.**     **Negligent Infliction of Emotional Distress Claim**

Defendant argues this Court should decline to exercise supplemental jurisdiction over Plaintiff's state-based claim due to: (1) the absence of any well-pleaded federal claim, and (2) Plaintiff's failure state a claim upon which relief can be granted. (Doc. No. 20, pp. 13-14). As discussed above, Plaintiff has sufficiently plead claims against the Board arising under federal law

such that supplemental jurisdiction is appropriate. Defendant alternatively argues the Court should dismiss Plaintiff's claim of negligent infliction of emotional distress because she fails to allege the Board has waived its government immunity.

In North Carolina, a county board of education is immune from tort liability except to the extent it has waived such immunity by acquiring liability insurance. Presell v. Pell, 260 S.E.2d 611, 614–15 (N.C. 1979). Pursuant to North Carolina General Statute § 115C–42, securing liability insurance against certain negligent or tortious acts is the only means by which a local board of education may waive its immunity as to those acts. N.C. Gen. Stat. § 115C–42 ("[S]uch immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort."); see also Collum v. Charlotte-Mecklenburg Bd. of Educ., No. 3:07CV534-RJC-DSC, 2010 WL 702462, at *7 (W.D.N.C. Feb. 23, 2010) ("North Carolina General Statute § 115C–42 'provides the only means by which a board of education may waive its sovereign immunity.'") (quoting Magana v. Charlotte–Mecklenburg Bd. of Educ., 645 S.E.2d 91, 92 (N.C. Ct. App. 2007)). Courts strictly construe this statute against finding waiver of immunity. See Hallman v. Charlotte–Mecklenburg Bd. of Educ., 477 S.E.2d 179, 181 (N.C. Ct. App. 1996).

Thus, under North Carolina law, a complaint alleging negligence of a school board fails to state a claim upon which relief can be granted when it includes no allegations of immunity waiver based on insurance procurement. Fields v. Board of Education, 111 S.E.2d 910 (N.C. 1960); Gunter v. Anders, 444 S.E.2d 685, 689 (N.C. Ct. App. 1994) (negligence claims against the school board dismissed where student failed to allege waiver of sovereign immunity by purchase of insurance). Likewise, this Court has consistently applied the law to dismiss state-based tort and negligence claims against government entities where the plaintiff failed to allege the governmental

12

entity waived its immunity. See Walsh v. Mackey, No. 1:11-CV-321-MR-DCK, 2012 WL 2568161, at *11 (W.D.N.C. June 27, 2012), report and recommendation adopted, No. 1:11CV321, 2012 WL 3190873 (W.D.N.C. Aug. 3, 2012), aff'd, 488 F. App'x 740 (4th Cir. 2012); Suarez v. Charlotte-Mecklenburg Sch., 123 F. Supp. 2d 883, 892 (W.D.N.C. 2000) (dismissing tort claim against Charlotte-Mecklenburg Board of Education when plaintiff failed to allege waiver of governmental immunity).

In the present case, Plaintiff does not allege the Board waived governmental immunity. In its Memorandum of Law Supporting a Motion to Dismiss, the Board specifically addresses the omission of any waiver allegations (Doc. No. 20, p. 13-14). Plaintiff's response brief fails entirely to acknowledge the issue of government immunity and waiver. (Doc. No. 26). In fact, Plaintiff's memorandum includes no reference whatsoever to the state-based claims put forth in the Amended Complaint. Id.

Seeing as neither the Amended Complaint nor subsequent memoranda address waiver of the School Board's immunity, Plaintiff's claim for negligent infliction of emotional distress must fail. Accordingly, as to Plaintiff's claim for negligent infliction of emotional distress, Defendant's Motion to Dismiss is **GRANTED**.

### B. Claims against Janice Burns

Plaintiff presents no argument or objection to that portion of Principal Burns' Motion seeking dismissal of the Title IX and negligent infliction of emotional distress claims against her. (See Doc. No. 25). As such, Defendant's Motion to Dismiss Plaintiff's claims against Burns under Title IX and for negligent infliction of emotional distress are **GRANTED**. The Court will therefore address the claims against Ms. Burns under 42 U.S.C. § 1983.

Claims brought under § 1983 provide a remedy in circumstances where a party has been deprived of their constitutional rights by officials of the State. Schemer v. Rhodes, 416 U.S. 232, 243, 94 S.Ct. 1683, 1689, 40 L.Ed.2d 90 (1974). Plaintiff in the present case brings a § 1983 action against Principal Burns in both her official and individual capacity. (Amd. Compl. p. 1). Therefore, the sufficiency of the allegations will be considered first with respect to the official capacity claim and, next, with respect to the individual capacity claim.

### i. Section 1983 Official Capacity Claim

The Supreme Court, in clarifying the distinction between official and personal capacity actions, has held official capacity suits against state officers are generally "only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n.55, 98 S.Ct. 2018, 2035, n.55, 56 L.Ed.2d 611 1978). In Kentucky, the Court further determined "[t]here is no longer a need to bring official-capacity actions against local government officials, for . . . local government units can be sued directly for damages and injunctive or declaratory relief." 473 U.S. 159, 167, n.14, 105 S. Ct. 3099, 3106, n.14, 87 L. Ed. 2d 114 (1985). Thus, an official capacity suit brought against a representative of a state entity is "to be treated as suits against the entity." Id. at 66, 105 S.Ct. at 3105.

Citing Kentucky, the Fourth Circuit has held a § 1983 official capacity claim against a school administrator should be dismissed as duplicative when the school board is also a defendant. Love–Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (holding an official capacity claim against defendant superintendent was essentially a claim against defendant school board and therefore

14

duplicative); see Hicks v. Halifax Cty. Bd. of Educ., 93 F. Supp. 2d 649, 667 (E.D.N.C. 1999) (dismissing official capacity claims against superintendent and principal where school board was also sued under the same claim).

Pursuant to Kentucky and Martin, Plaintiff need not proceed against Principal Burns in her official capacity while also asserting a § 1983 claim against the Board. Accordingly, Defendant's motion to dismiss Plaintiff's § 1983 claim against Burns in her official capacity is **GRANTED**.

### ii.     § 1983 Individual Capacity Claim

State officials may, in some circumstances, be held personally liable for actions they take in their official capacity. See Hafer v. Melo, 502 U.S. 21, 28, 112 S. Ct. 358, 363, 116 L. Ed. 2d 301 (1991). However, "the distinction between official-capacity suits and personal-capacity suits is more than 'a mere pleading device.'" Id. (quoting Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989)). In order to sufficiently allege personal liability under § 1983, a plaintiff must assert a defendant acted directly in violating the plaintiff's constitutional rights. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (holding state superintendent of jails was not personally liable where plaintiff failed to allege facts showing the superintendent acted personally to deprive the plaintiff of his right to medical treatment); Mandsager v. Univ. of N. Carolina at Greensboro, 269 F. Supp. 2d 662, 679 (M.D.N.C. 2003).

Construing the allegations in the light most favorable to Plaintiff, Plaintiff's Amended Complaint contains minimally sufficient allegations to plausibly tie her claims for violation of constitutional rights to Principal Burns' conduct, including the allegations that she received notice of the alleged ongoing harassment but failed to take prompt action to address them.

In addition, while Plaintiff does not explicitly reference a § 1983 supervisory liability claim, it appears Plaintiff asserts such a claim against Principal Burns based on the theory of supervisory liability. Plaintiff frequently references the conduct of subordinate school officials and appears to allege a causal link between the alleged injury and Principal Burns' role as a supervisor, particularly as it relates to the alleged actions or omissions of school administrators, teachers, and the SRO following Plaintiff's complaints of sexual harassment. (See, e.g., Amd. Compl. ¶ 64(e-g)). Defendant's pleadings here acknowledge Plaintiff's Amended Complaint appears to advance a claim of § 1983 supervisory liability against Principal Burns. (Doc. No. 22, p. 8).

Supervisory liability is effectively a method by which to identify "the persons in the decision-making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (quoting Slakan v. Porter, 737 F.2d 368, 376 (4th Cir. 1984)). Individual liability of a supervisor represents an "exception to the rule that a 'supervisor is not liable under section 1983 unless an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.'" Cranford v. Frick, No. 1:05CV00062, 2007 WL 676687, at *6 (M.D.N.C. Feb. 28, 2007) (alteration in original) (citing Specht v. Jensen, 832 F.2d 1516, 1524 (10th Cir. 1987)). Under a theory of supervisory liability, a supervising official may be held liable for the constitutional violations of her subordinates if she was aware of her subordinates' harmful conduct, and the supervisor's indifference or tacit authorization of such conduct was a cause of a plaintiff's injury. See Ensko v. Howard Cnty., Md., 423 F.Supp.2d 502,

511 (D.Md. 2006). Here, Plaintiff's Amended Complaint contains minimally sufficient allegations as to Principal Burns' alleged indifference to assert a claim for supervisor liability.

Bearing in mind the standard by which this Court must construe Plaintiff's Amended Complaint in analyzing Defendant Burns' motion to dismiss, the Court notes its ruling here is without prejudice to Defendant Burns' to reassert her arguments pertaining to individual liability following discovery and at summary judgment. Therefore, Defendant Burns' motion to dismiss Plaintiff's 42 U.S.C. § 1983 claim against Ms. Burns in her individual capacity is **DENIED** without prejudice to reassert these arguments at summary judgment.

## IV. CONCLUSION

**IT IS ORDERED** that Defendant UCBOE's Motion to Dismiss (Doc. No. 19) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant Principal Burns' Motion to Dismiss (Doc. No. 21) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

Signed: September 7, 2017

Frank D. Whitney
Chief United States District Judge